(76 App. Div. 15.)

## McPHILLIPS v. FITZGERALD.

(Supreme Court, Appellate Division, First Department. November 14, 1902.)

1. BUILDINGS OWNED BY TENANT—RIGHT OF REMOVAL—DESTRUCTION—VALUE TO TENANT.

The tenants of certain real estate owned the buildings thereon. It had been the custom of the landlord (a religious corporation), for 40 years, to renew its short-time leases to the owners of the buildings; each lease containing a stipulation that the building might be removed by the tenant at the expiration of the term. *Held* that, in an action to recover for the destruction of the buildings by negligence, it was proper, in estimating their value to the tenants, to consider the probability of either the renewal of the lease, or the sale of the buildings to the landlord.

2. SAME—LOSS OF RENTS BY TENANT.

In an action to recover damages for the destruction of a building owned by plaintiff, and rented to subtenants, but situated on leased ground, it is proper to consider the loss of rents by the tenant during the remainder of his lease of the ground.

3. SAME—REMOVAL OF DEBRIS.

In an action by the owner of a building to recover for its negligent destruction, the cost of removing the débris under orders of the municipal authorities constitutes a proper element of damages.

4. TENANTS IN COMMON—LEASE TO TWO PERSONS.

Under Rev. St. art. 1, § 44, providing that every estate granted to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be a joint tenancy, a lease which "demises, grants, and farm lets" certain lots of land to two parties creates, on its face, a tenancy in common.

5. SAME—COPARTNERSHIP.

The fact that a lease of certain lots and the buildings thereon were purchased by two brothers under an agreement to equally share the cost and all subsequent loss and profits is not sufficient of itself to establish a copartnership, and the cause of action owned by one for damages sustained by the destruction of the buildings vested on his death in his executor, and not in the other brother.

6. ACTION BY CO-TENANTS—DEATH OF ONE—CONTINUATION OF ACTION.

After the commencement of an action by two tenants in common for an injury to the estate, one of them died, leaving a will in which he granted to the survivor all his interest in pending actions, and also made him sole executor. *Held*, that the survivor was entitled to continue the action in his own name for the full amount of the damages sustained by both.

7. SAME—ORDER CONTINUING ACTION.

    The court granted a motion of the survivor that the action be continued in his favor on the original pleadings. *Held*, that the order continued the action in him for the full amount of injuries sustained by both.

8. SAME—FAILURE TO OBJECT—WAIVER.

    Defendant did not object to the granting of the motion, and, on proof of the provisions of the will, judgment was rendered in the survivor's favor for the full amount of the injuries sustained by both. *Held*, that it would be assumed that the parties waived the necessity of a supplemental pleading setting out the facts on which the order was based.

    Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

Action by Mathew McPhillips against Mary Fitzgerald, as executrix of James M. Fitzgerald, deceased. From a judgment in favor of plaintiff, and an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, and INGRAHAM, JJ.

Herbert C. Smyth, for appellant.

Charles Strauss, for respondent.

INGRAHAM, J. The action was originally brought by Mathew McPhillips and Andrew McPhillips, plaintiffs, against James M. Fitzgerald, defendant, to recover the damages sustained by the plaintiffs by the fall of a building adjoining the plaintiffs' premises in the city of New York, through the negligence of the defendant, the lessee of an adjoining building. The defendant in that case answered in May, 1894. Subsequent thereto, and prior to the trial of the action, Andrew McPhillips, one of the plaintiffs, and the defendant James M. Fitzgerald, died, whereupon the plaintiff made a motion to continue the action, which resulted in an order, on notice to the executrix of the defendant, whereby it was ordered that the action be continued in favor of Mathew McPhillips, plaintiff, against Mary Fitzgerald as executrix of the last will and testament of James M. Fitzgerald, deceased, and that the pleadings and proceedings already had stand as the pleadings in the action as continued. There was no other amendment to the pleadings. The complaint alleged that on the 27th day of November, 1893, the plaintiffs were the lessees of two certain lots of land situate at Nos. 79 and 81 King street, in the city of New York, under a certain indenture of lease, dated March 21, 1892, made and executed to them by the rector, church warden, and vestrymen of Trinity Church, in the city of New York, for the term of two years from May 1, 1892, and were also at the aforesaid date the owners of two certain buildings erected upon said land, and rented by the plaintiffs for dwelling apartments; that the defendant was the lessee and occupant of the building situate on the north side of King street, in the city of New York, known as Nos. 75 and 77 King street; that the defendant negligently and improperly allowed the building to fall into a state of decay, and, knowing the weak and unsafe condition of the same, negligently and improperly loaded or caused to be loaded the said building with huge bales of paper and other merchandise, whereby said building became strained, weakened,

and impaired by reason of such overloading; that on the 27th day of November, 1893, the said building collapsed and fell upon the buildings of the plaintiffs, so injuring and damaging them that it became necessary to, and the plaintiffs were obliged to and did, cause the same to be taken down, all to their damage in the sum of $14,000. The answer denies knowledge or information sufficient to form a belief as to the allegations of the complaint, except those that allege the negligence of the defendant which are denied.

There is no allegation in the complaint of a copartnership, or that this property was owned by the plaintiffs as copartners. The case came on for trial before a jury, and the question as to the defendant's negligence was submitted to the jury, who found in favor of the plaintiff, and it is not contended upon this appeal but that the evidence justified that verdict. That question being disposed of, the counsel consented that all other issues in the case be reserved for the decision of the court without a jury. After the jury had rendered their verdict, further evidence was submitted to the court upon the question of the damages, and subsequently the court filed a decision fixing the damages as follows: That $7,000 was the fair value of the building, upon the title which the plaintiff and his brother had, giving them the right to remove the buildings; that the sum of $467.28 was the damage sustained by the plaintiff in consequence of the loss of rents of the building during the continuance of the lease; that, after the fall of the defendant's building, the building department required the removal of the building for the public safety, the cost of which was $300,—and directing judgment in favor of the plaintiff for the aggregate of these sums, which amounted, with interest to the date of the decision, to $10,302.19, for which sum judgment in favor of the plaintiff was awarded as against the defendant. The plaintiff excepted to this decision, and the important question presented on this appeal is as to the correctness of the method adopted by the court in ascertaining the amount of damages that the plaintiff sustained in consequence of this injury.

The fee of the plaintiff's property was owned by the rectors, church wardens, and vestrymen of Trinity Church, in the city of New York, a religious corporation. This property was originally leased by the Trinity Church to Aaron Burr for a period of 99 years, which lease expired in the year 1865, and contained no covenant of renewal. The buildings upon the property had been erected under this lease prior to the year 1844. Upon the termination of this lease the Trinity Church Corporation made a new lease of the premises, including the buildings thereon, to the tenant then in possession of the property under the former lease for a short term, and subsequently renewed this lease to the same tenants from time to time down to May 1, 1888. These leases contained a covenant authorizing the lessee to remove the buildings at the end of the demised term. Prior to that time the plaintiffs had acquired from a former lessee an assignment of the lease, together with a transfer of the buildings and improvements upon the leasehold premises. At the expiration of this lease of which the plaintiffs had received an assignment, a new lease, identical in form with the one which had been transferred to them, was

granted to them by the Trinity Corporation. The first lease to the plaintiff seems to be dated March 26, 1888, and was for the term of two years. At the expiration of that term, by lease dated March 19, 1890, the corporation granted to the plaintiff a renewal lease of the premises for one year from May 1st of that year, and on March 10, 1891, granted a renewal lease containing the same covenants to the plaintiff for a new term for one year, from May 1, 1891. This lease was renewed on March 23, 1892, and seems to have been for a term of two years, and was in force on the 27th day of November, 1893, when the defendant's building collapsed, destroying the plaintiff's building. There was no covenant of renewal in the lease in force at the time of the collapse of the defendant's building. There was evidence at the trial that the fair cost of constructing these buildings, using the old foundations, walls, and materials upon the premises, would have been $11,600, and that the fair value of the buildings at the time of their construction, making proper allowance for their depreciation by age, was $10,200, and that immediately before their destruction the buildings were fairly worth to the plaintiff and his brother, considering the nature of their tenure, the probability of their being able to obtain renewals of their lease for many years, or to sell the buildings to a succeeding tenant or to the owner, the sum of $7,000.

I think the evidence fairly sustained this finding. The property had belonged to a religious corporation, who had leased the building to tenants for a period of about 130 years. The first lease was for 99 years, and subsequently the corporation had adopted a policy of renewing the leases for 1 or 2 years. The tenant, however, owning the building upon the property, and having the privilege of removing it at the end of each term, had a decided advantage over any other person in relation to a new lease; and this, coupled with the uniform custom of the Trinity Church Corporation, extending over this long period, of granting a renewal of these leases, was such a probability of a renewal, although one not secured absolutely to a tenant, that it could be properly considered by the court in estimating the value of the building to the tenant at the time it was destroyed by the wrongful act of the defendant. The property, as occupied by the plaintiff, was the building and the land upon which it was erected. The land belonged to the corporation; the building to the plaintiff; and, unless the corporation acquired the plaintiff's title to the building, it could lease to a new tenant nothing but the unimproved land, which, before it could be available as an income-producing property, would have to be improved. To induce a tenant to improve the property, a long lease would be required; this being contrary to the policy of the corporation, which was to renew these leases for a short period, but always to renew them to the tenant who had before been in possession and was the owner of the building. This created a strong probability that these leases would be indefinitely renewed, which would certainly have an effect upon the value of the leases and of the building erected upon the leasehold property, and was certainly a condition that the court was bound to consider in determining the value of the building to the plaintiffs. What the plaintiff was en-

titled to was fair compensation for the injury occasioned to him by the wrongful act of the defendant; and it was that building as it was valued upon that property, considering all the surrounding circumstances and the advantages that would accrue from its ownership to the plaintiffs, that was to be determined by the court, and, upon this evidence, we think there was sufficient to justify the value that was placed upon it.

The other two items we also think were properly allowed. They were direct loss to the plaintiff caused by the collapse of the defendant's building, and the consequences that flowed therefrom. But for the destruction of the building, the plaintiffs would have received the fair rental value of the property for the remainder of the term; and, but for that collapse of the defendant's house, the plaintiffs would not have been compelled to pay the sum of money that they did in removing the unsafe walls. We see no reason, therefore, to disagree with the learned trial court as to the amount of damage that he fixed as sustained by the owners of the building at the time of its destruction.

The remaining question, and which is one of more difficulty, is presented by an award to the plaintiff of the whole damage sustained by the destruction of his building. As before stated, the action was commenced by the two brothers; it being alleged in the complaint that they were the lessees of the lots of land, and the owners of the two certain buildings erected upon said land for dwelling apartments. There was no allegation of a copartnership, or that they held these buildings as copartners or as joint tenants, but a simple allegation that they were tenants and the owners of the buildings. The leases to these plaintiffs are not printed at large in the record. It would appear, however, from the statement of the leases, that the Trinity Church Corporation did grant, demise, and farm let unto Mathew McPhillips and Andrew McPhillips, the parties of the second part, these two lots of land. Upon this statement of the title, under the Revised Statutes, the estate that vested in these tenants would be a tenancy in common. By section 44 of article 1 of the Revised Statutes (volume 1, p. 727), it was provided that "every estate granted or devised to two or more persons in their own right, shall be a tenancy in common, unless expressly declared to be a joint tenancy"; and by section 1 of the same article it is provided that "estates in real property are divided into estates of inheritance, estates for life, estates for years, estates at will, and by sufferance." Thus a lease for years would be in grant of an estate under section 1 of the article, and every estate granted to two or more .persons in their own right is a tenancy in common, unless expressly made a joint tenancy. These two lessees, therefore, became tenants in common of the leased.premises; and that was their relation to the property, unless the evidence establishes that the property was copartnership property, and held by them as copartners. It is not claimed that these two plaintiffs were in copartnership, except so far as related to their ownership of this property. They were not transacting business as partners, and no copartnership existed prior to the time that they purchased the property. A case is not presented, therefore, where a copart-

nership has acquired title to property which was purchased with
copartnership funds, or used in the business of an existing copartner-
ship. It is true that parties may form a copartnership for the pur-
pose of dealing in real estate or of leasing real estate; but, to estab-
lish that relation, there must be evidence to show that it was the in-
tention of the parties to create such a copartnership, and it is in that
aspect that I think this case fails. It is true that the lease and build-
ings, when first purchased by these two plaintiffs, were purchased
under an agreement by which each of the assignees of the lease was
to advance an equal portion of the consideration paid, and that the
loss and profits were to be divided between them. There was, how-
ever, none of the incidents of a copartnership, and it is quite clear that
neither of these parties understood by this arrangement that there
was created a copartnership which would carry with it the duties and
obligations attaching to that relation. If one of these brothers had
issued an obligation assuming to bind a copartnership, I apprehend
that the brother would not be held liable upon this evidence, as suffi-
cient to establish for that purpose a copartnership. Nor do I think
that upon this evidence a transfer by one of the two lessees would
convey a title to the whole leasehold. The parties characterized
their relation to this property, and the nature of their title, when they
accepted several successive leases from the Trinity Church Corpo-
ration, which ran to them as tenants in common, and not as joint ten-
ants or as copartners; and it was that estate that they held in this
property at the time of the collapse of the building. My conclusion,
therefore, is that the finding of the learned trial judge that they were
copartners, and thus joint tenants, and that the cause of action vested
in the survivor, was without evidence to sustain it; and this is strong-
ly fortified by the allegations of the complaint. The action, there-
fore, was commenced by these two brothers as tenants in common.
One of the tenants died. The cause of action for the damages sus-
tained by him vested in his executor upon his death, and that cause
of action could only be enforced by the executor, as such, or one
to whom such cause of action had been assigned. Undoubtedly the
executors of the deceased tenant could have been made a party plain-
tiff in this action, and the action continued in the name of the sur-
viving tenant and the executors of the deceased tenant. The death
of this tenant severed the two causes of action that were united in
the complaint; that is, the causes of action to recovery for the in-
juries to the estate of these two tenants in common in this property.
It could only be reunited by bringing in the representatives of the
estate of the deceased tenant in common, or the party to whom the
cause of action had been assigned.

The will of the deceased tenant, whereby he left to the brother, the
remaining plaintiff, all of his property, including "any interest that I
may have or that may accrue to me from actions now pending by
me," and appointing his brother, the surviving plaintiff, his sole ex-
ecutor, was introduced in evidence, and I think this vested the cause
of action here sought to be enforced in the plaintiff. Here the plain-
tiff was both the legatee of the lease and the executor of the will.
The cause of action certainly vested in the plaintiff as executor, the

beneficial interest therein vesting in the plaintiff individually. He was a party to the action, and the court, upon his application, asking that the action be continued in favor of the plaintiff Mathew Mc-Phillips against the executrix of the deceased defendant, ordered that the motion be in all respects granted, "and that said action be, and the same hereby is, continued in favor of Mathew McPhillips, as plaintiff, and against Mary Fitzgerald, as executrix," etc., and that the pleadings and proceedings already had stand as the pleadings in the action as continued. The action that was thus continued was an action to recover for the damages sustained by both of the tenants in common. It was continued in favor of the plaintiff, who, by the will of the deceased coplaintiff, had become the owner of the cause of action individually, and was executor of his deceased coplaintiff. There was thus vested in the plaintiff, either in his representative capacity, or as legatee under the will, the entire cause of action for the destruction of the building owned by these two plaintiffs as tenants in common; and a recovery in this action would certainly be a bar to any action brought by the plaintiff, as the executor of his brother, to recover the damages sustained to his interest in the property. There was no claim made, either by any pleadings or upon the trial, that there was a defect of parties plaintiff. The rule of the common law that all tenants in common must join in an action for damages caused to real property requires that, to proceed in this action, it should be continued after the death of one of the plaintiffs, by making the person who succeeded to his title a party. And that it was proper for the court to join the personal representatives of the deceased party as a party plaintiff in an action of this character appears from the case of Shepherd v. Railway Co., 117 N. Y. 442, 23 N. E. 30. Upon these facts being presented to the court, the court directed that the action (that is, the action to recover the damages sustained to this building as an entirety by the wrongful act of the defendant) should be continued by the plaintiff against the executors of the deceased tenant. I think the fair purport of that order is to continue the action, which would include the injuries sustained to the whole building in the name of the surviving plaintiff, he having succeeded to the interest of the deceased plaintiff in the cause of action which was sought to be enforced; and I can see no objection to this course, as the judgment in this case would, I think, be a bar to any action brought by the executors of the deceased plaintiff, as his executor, and legatee of the action, were both before the court as plaintiffs, and have sought and obtained a recovery for the whole damage sustained by the wrongful acts of the defendant. It is true that the proceeding adopted to continue the action in favor of the plaintiff was somewhat irregular, as it would have been better practice to serve a supplemental complaint alleging the death of one of the plaintiffs, and the devolution of his title upon the remaining plaintiff. But the order, which was made without objection by the defendant, provides that the pleadings and proceedings already had should stand as the pleadings in the action already continued; and, as the action could not be maintained unless there was united in the plaintiff the cause of action for the destruction of the building which

accrued to both of the tenants in common, it must be assumed, I think, that the parties understood that the necessity of a supplemental pleading alleging these facts to show such a devolution of title should be waived. If the defendants had wished that such supplemental pleadings should be served, they should have appeared on the motion, and required that a provision therefor be inserted in the order. But as the order that was entered provided for the continuance of the action by the plaintiff, and as he had by this will acquired a title to the cause of action, including that which accrued to the deceased plaintiff, I think that sufficient to justify the court in disregarding the irregularity, and proceeding to give to the plaintiff the relief to which he was entitled, both as tenant in common of the property, and as legatee of the deceased coplaintiff; and, to sustain the judgment, the pleadings will be deemed amended so as to set forth the facts which were proved upon the trial, and which justified the court in making the award that was made.

Exceptions were taken to rulings upon questions of evidence, but I think no error was committed which would justify a reversal of the judgment, and they do not require discussion.

It follows that the judgment and order appealed from should be affirmed, with costs.

PATTERSON, J., concurs. HATCH, J., concurs in result. VAN BRUNT, P. J., dissents as to the damages.