### In re HAWKSTONE STREET IN CITY OF NEW YORK.

#### Appeal of CITY REAL ESTATE CO.

(Supreme Court, Appellate Division, First Department. April 8, 1910.)

1. FIXTURES (§ 1*)—NATURE.
    Though it was a common-law maxim that whatever is affixed to land becomes a part of it, yet there must now be actual annexation to the realty, or something appurtenant thereto, application to the purpose to which that part of the realty with which it is connected is appropriated, and an intent of the party making the annexation to make a permanent accession to the freehold.
    [Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 1, 6; Dec. Dig. § 1.*]

2. EMINENT DOMAIN (§ 133*)—CONDEMNATION OF LAND—FIXTURES.
    Where a person, with knowledge that property was in process of condemnation for street purposes, purchased it and with the evident purpose

of enhancing the award, and with no reasonable expectation that it would remain as a permanent improvement upon the land to which it was affixed, built a house thereon, the house constituted no part of the real estate taken, and the owner was not entitled to compensation therefor.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 359–361; Dec. Dig. § 133.*]

Appeal from Special Term, New York County.

Application of the City of New York to acquire title for the opening of Hawkstone Street in the Borough of The Bronx. From an order confirming the report of Commissioners of Estimate and Assessment, the City Real Estate Company appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Benjamin N. Cardozo, for appellant.

John P. Dunn, for respondent.

SCOTT, J.   This appeal presents a question somewhat similar to, but not precisely identical with, that passed upon by the Court of Appeals in the Briggs Avenue Case (Matter of City of New York, 196 N. Y. 255, 89 N. E. 814). The appeal relates to a single parcel, known as "No. 6" on the Damage Map, and, although the appeal is prosecuted in the name of the City Real Estate Company, the real party in interest appears to be one Harold Swain, who seems to have been the actual owner, holding in the names of others, since a period prior to the commencement of this proceeding. The question involved is whether or not the commissioners of estimate should have allowed to the owner of parcel No. 6 the value of a building, a part of which stood upon the property to be acquired. Hawkstone street was laid out as one of the permanent streets of the city on section 9 of the Final Maps and Profiles of the Twenty-Third and Twenty-Fourth wards, and filed in the register's office of the city of New York November 2, 1895.

In July, 1902, a petition was presented to the president of the borough of The Bronx, and chairman of the local board of public improvement, asking for the initiation of proceedings to acquire title to and open Hawkstone street. This was the first step towards such acquisition. Although Swain, the real appellant, did not sign the petition, he was active in soliciting and procuring others to sign it. On September 12, 1902, the board of estimate and apportionment adopted a resolution authorizing the commencement of condemnation proceedings. On December 22, 1902, Swain, in the name of another, acquired a plot of land, which included what afterwards became parcel No. 6 and was taken in this proceeding. The evidence leaves no doubt, and it is not questioned, that Swain, when he acquired the property, knew of the proceedings that had then been taken looking to the acquisition of the property for street purposes.

On May 1, 1903, commissioners of estimate and assessment were appointed. On September 16, 1903, Swain commenced the erection of the house out of which this controversy has arisen, and on March 31,

1904, the building was completed. On June 1, 1904, title to the property taken vested in the city. The lot acquired by the appellant's grantor was 50 feet in width and 100 feet in depth, and so situated that a comparatively small triangle lay within the lines· of Hawkstone street, as laid down on the City Map. What remained of the plot after the necessary land had been acquired for street purposes was of ample size to contain the building which Swain had erected, and in fact that building has since been moved onto and now stands upon the portion of the plot not taken. The house, which was erected during the progress ·of the condemnation proceedings, of which the builder had full notice, was so located that a portion of it, approximately one-half, stood within the lines of Hawkstone street, then being condemned, and the remainder on that portion of the lot not to be taken. The house was a substantial frame structure, of a· rather higher quality than other houses in the neighborhood, and is said to have cost about $15,000. Under this condition of affairs, the commissioners in their first report made an award for the land only, but allowed nothing for the house. The motion to confirm the report was denied, and the matter referred back. While the matter was pending before the commissioners under the reference back, this court handed down an opinion in Matter of Briggs Avenue, 118 App. Div. 224, 102 N. Y. Supp. 1102, whereupon testimony was taken as to the cost of moving the building onto that part of the plot not to be taken. This was found to be $2,692.07, and the commissioners made a new award of $3,276.67, which is the amount at which the award has been, confirmed.

It appears from a supplemental report filed by the commissioners that they arrived at their award by adding together the value of the land taken, irrespective of the building, and the cost of moving it. The appellant stands upon what it deems to be the strict constitutional right of a property owner to deal with and improve his real estate, as he sees fit, until the moment that title passes out of him, and consequently it is claimed that the award should include the full cost of erecting the building, or at least that in appraising the property taken it should have been treated as having been permanently enhanced in value by the erection of the house upon it. After the condemnation proceedings had been completed, a stipulation was entered into between the appellant and the city that so much of ·the building as lay within the lines of Hawkstone street should be sold without prejudice to the rights or claims of either party. The sale was had, and so much of the building was sold to appellant, or its grantee, for $1,250, and the whole building moved back upon and adjusted to that portion of the plot as had not been acquired. The important question is whether or not this house had become a part of the realty, or whether, under the peculiar circumstances of the case, it remained a chattel notwithstanding it was affixed to the realty.

It is an ancient maxim of the common law that whatever is affixed to land becomes a part of the land (Broom's Legal Maxims, 401); but· such has been the development of the law to meet the varying conditions of modern life that mere annexation is not now always a sufficient test to determine what is to be considered realty, and what personal property. Other considerations often enter into the solution of

the problem.   In Potter v. Cromwell, 40 N. Y. 287, 100 Am. Dec. 485, the Court of Appeals examined the question as to when chattels attached to the realty will or will not become a part of the land, and dwelt with especial emphasis upon the element of intention as a controlling factor of the problem.   After citing and commenting upon many cases in this and other jurisdictions, the court unreservedly accepts the criterion laid down in Teaff v. Hewett, 1 Ohio St. 511, 59 Am. Dec. 634, wherein it was held that there must be the united application of three requisites: First, actual annexation to the realty or something appurtenant thereto; second, application to the use or purpose to which that part of the realty with which it is connected is appropriated; third, the intention of the party making the annexation to make a permanent accession to the freehold.

The question again came before the Court of Appeals in McRea v. Central Nat. Bank, 66 N. Y. 489, and was discussed by Rapello, J., with his usual thoroughness and lucidity.   He again laid great stress upon the intention of the annexation, saying:

"As between vendor and vendee, the mode of annexation is not the controlling test.   The purpose of the annexation, and the intent with which it is made, is in such cases the most important consideration.   The permanency of the attachment does not depend so much upon the degree of physical force with which the thing is attached, as upon the motive and intention of the party attaching it."

Authorities to the same effect might be cited to an indefinite extent; but the foregoing are sufficient to illustrate the rule which we deem to be decisive of the present appeal.   Under the circumstances as above detailed, it is impossible to attribute to the builder of the house in question either the intention or the expectation that the house would constitute a permanent attachment to so much of the realty upon which it stood as lay within the line of Hawkstone street.   That the structure consisted of a house is not at all decisive of the question.   In Meigs' Appeal, 62 Pa. 28, 1 Am. Rep. 372, the question was whether certain buildings erected by the federal government and used as barracks and a hospital were real or personal property.   It was held that they had not become part of the realty, although firmly fixed thereto, because it was evident that they were not intended to be permanent fixtures, but only to be used temporarily while the exigencies of the government required their use.   Indeed, we find little difference in principle between the case presented on this appeal and the Briggs Avenue Case (Matter of City of New York, 196 N. Y. 255, 89 N. E. 814).   It is true that the house in question in that case was a transplanted house, having been erected upon another lot, and perhaps several other lots, before it was moved to and erected upon the land required for Briggs avenue.   Here the house was only planted; but the intention, and, as we think, the effect, was the same.   In each case the house was erected upon property in process of condemnation for street purposes, with the evident purpose of enhancing the award, and with no reasonable expectation that it would remain as a permanent improvement upon the land to which it was affixed.   Under the situation pursuant to which part of the building was sold, the then owner will be entitled to recover the purchase price from the city.   That amount

cannot, however, properly be included in the award in this proceeding, since the house constituted no part of the real estate taken.

. It follows that the order appealed from is right, and is affirmed, with $10 costs and disbursements. All concur.