### In re PARKWAY IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   May 3, 1912.)

1. EMINENT DOMAIN (§ 133*)—CONDEMNATION OF LAND—DAMAGES—HOUSE AS REALTY.

Where an owner of lots which were taken by a city for a street with knowledge of the pendency of the proceedings and of the action of the board of estimate and apportionment fixing the date for the vesting of title in the city moved a house onto the lot after having obtained a permit to move it onto a lot which had not been taken, there was such a lack of good faith that his act would not make it a permanent acquisition to the realty, and an award of the commissioners of estimate and assessment failing to grant any sum for the house as a part of the realty was proper.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 358–361½; Dec. Dig. § 133.*]

2. EMINENT DOMAIN (§ 133*)—CONDEMNATION OF LAND—DAMAGES—HOUSE AS REALTY.

Where, after the commencement of condemnation proceedings, a house was moved onto land taken in bad faith, and for the purpose of unreasonably increasing the damages to be awarded, a failure of the commissioners of estimate and assessment to award damages for the excavation and foundation on which the building was placed and for the cost of moving was proper.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 358–361½; Dec. Dig. § 133.*]

3. EMINENT DOMAIN (§ 133*)—CONDEMNATION OF LAND—DAMAGES—TAKING LAND IN DIFFERENT PROCEEDINGS—DESTRUCTION OF HOUSES.

Where at the time title to the northerly half of a lot, including the rear wall of a building thereon, was taken by the city in condemnation proceedings, there had already been a condemnation of the southerly half which took the building leaving the rear wall, and the owner had had an award of the entire value of the building on the ground that the taking of all of it but the rear wall was equivalent to a total destruction, he could not have an award in the second proceeding for the value of the building on the ground that the destruction of the rear wall was equivalent to a destruction of the building, even though the title in the first proceeding had not yet been taken by the city, as the rule that, where only a part of a plot is taken for a public purpose, the owner is entitled, not only to the value of the land actually taken, but also conse-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

quent damages incidental thereto, will not be applied where it would work manifest injustice.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 358–361½; Dec. Dig. § 133.*]

4. EMINENT DOMAIN (§ 201*)—TAKING PROPERTY—DAMAGES—EVIDENCE.

And the evidence of the proceedings to open the street in which the first award was made was properly received in the second proceeding to establish the fact of the owner's election.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 540½; Dec. Dig. § 201.*]

Appeal from Special Term, New York County.

Application of the City of New York to acquire title for the opening of the Parkway between the Grand Boulevard and Concourse and Claremont Park at Weeks Avenue in the Twenty-Fourth Ward, Borough of the Bronx. From an order confirming the report of commissioners of estimate and assessment, Harold Swain and the City of New York appeal. Reversed in part and affirmed in part.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

L. Howell La Motte, of New York City, for appellants.
Harold Swain, of New York City, for respondent.

SCOTT, J. In this proceeding we are called upon to consider appeals by Harold Swain and by the city of New York. The latter appeals from so much of the order of the Special Term as sustains the objections to the awards of the commissioners of estimate and assessment respecting damage parcels Nos. 1 and 2, and remits the proceeding, so far as concerns these parcels, to said commissioners for reconsideration and correction. Harold Swain appeals from so much of the order as confirms the report of said commissioners respecting damage parcels Nos. 19 and 23. The order was otherwise appealed from by the city, but we are informed by counsel that all appeals except those above noted have been withdrawn. The appeal of the city from so much of the order as affects damage parcels Nos. 1 and 2 presents the same question that has already been twice considered by this court and the Court of Appeals, as to the allowance to be made for "transplanted" houses. Matter of Briggs Avenue, 132 App. Div. 930, 117 N. Y. Supp. 1143, affirmed 196 N. Y. 255, 89 N. E. 814; Matter of Hawkstone Street, 137 App. Div. 630, 122 N. Y. Supp. 316, affirmed 199 N. Y. 567, 93 N. E. 377. Although the respondent argues with some warmth that these cases were wrongly decided, we do not consider it necessary to re-examine them, but shall content ourselves with inquiring whether the present case is covered by them.

[1] The respondent Swain owned the property known as damage parcels Nos. 1 and 2 situated at the corner of Belmont street and Grand boulevard, which were to be acquired in this proceeding. He also owned a house which stood partly on the land which had been acquired by the city of New York for the opening of Hawkstone street. In order to make this house available, he had to move it to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a new location, and he selected the lots to be acquired in this proceeding as damage parcels Nos. 1 and 2. The commissioners in this proceeding were appointed on April 13, 1906. At some time prior to that date, the respondent Swain had begun the excavation of a cellar on the land included in damage parcels Nos. 1 and 2. Whether that excavation was made with reference to the particular building which was afterwards moved upon this lot is not clear. After the commissioners were appointed, and after he had notice of their appointment, he proceeded to build stone foundations in the excavation. In order to move the house from Hawkstone street to the foundation prepared for it on damage parcels 1 and 2, it was necessary to carry it across the Grand boulevard, a public highway, and to do this it was requisite to obtain a permit from the president of the borough of the Bronx. At first such permit was refused, because it appeared that respondent intended to place the house upon land to be presently acquired in this proceeding which was then well under way. Thereupon the respondent professed to change his plans, and represented that it was his intention to place the house upon other property owned by him outside of, but adjacent to, the land to be acquired herein. Upon the faith of this representation, a permit was granted to carry the house across the highway. Having moved it across under the permit thus obtained, the respondent again changed his plans (if indeed there had ever been any change in them), and proceeded to "plant" the house on the foundation which he had prepared on damage parcels Nos. 1 and 2. He now seeks to recover the value of the house as well as the value of the lots. The commissioners refused to make any award for the house, but the Special Term, deeming the respondent entitled to such an award as he claims, has referred the proceeding back for reconsideration in this regard. Hence this appeal by the city.

No complaint is made by either party as to the amount awarded for the land. The sole question is whether this house had when title vested in the city become so attached to the land as to have become part of the realty. It would serve no useful purpose to enter upon an extended discussion of the law applicable in such cases. That was done in Matter of Hawkstone Street, supra. It was then held that, in order to find that a chattel had been so attached to the realty as to become a part of the real estate, it must appear, among other things, that it was the intention of the party making the annexation to make a permanent accession to the freehold, and that the permanency of the attachment does not depend so much upon the manner in which the thing is attached as upon the motive and intention of the party in attaching it. Applying these rules to the present case, it is impossible to find that the house in question was moved onto damage parcels Nos. 1 and 2 in good faith with the expectation and intention that it would become a permanent accession to the realty. On November 2, 1906, the board of estimate and apportionment, pursuant to the authority vested in them by law, adopted a resolution that title to the property to be acquired in this proceeding should vest in the city of New York on November 26, 1906. Of this resolution the respondent had knowledge. It was after that resolution had been

adopted, to wit, between November 17th and 24th, that respondent moved the house onto damage parcels Nos. 1 and 2, to which, as he then knew, the city was to take title on November 26th. It is attempting to put too severe a strain upon our credulity to ask us to believe that the house was thus moved onto the lots with the honest intention and expectation that it would thereby become a permanent accession to the realty. The respondent had then selected, or professed to have selected, a site upon an adjacent lot upon which to place the house. His abandonment of that purpose was coincident with his knowledge that the city decided to take title immediately. He well knew that, if the city acquired the house in this proceeding, it would have to get rid of it, and would probably offer it for sale, as was the custom. The whole scheme is as clear as daylight. It was hoped to receive an award for the full value of the house as a part of the realty, to repurchase it at the city's sale as an incumbrance to be removed, and then to move it a few feet to the permanent site already selected for it. The commissioners of estimate and assessment were quite right, under the circumstances, in refusing to make any award for the house as a part of the realty.

[2] It is now suggested that respondent should be allowed something for the expense to which he was put in digging the excavation and building the foundation. Such allowance could only be made upon the assumption that this work was done in good faith and constituted a permanent improvement of the realty. What the commissioners are called upon to estimate is the value of the land as it stands at the time title passes to the city, not what has been expended upon it to bring it to its condition at that time. For all that appears in this record they have made such an award in the present instance. At least no objection is made to their valuation of the land. Nor is the respondent entitled to be allowed any part of the cost of moving the house. So far as concerns the moving onto damage parcels Nos. 1 and 2, that expense was incurred in bad faith with a view to unreasonably increasing the award. So far as concerns the expense of moving the building from Hawkstone street across the Grand boulevard that would have been necessarily incurred in any case whether the house was placed on damage parcels Nos. 1 and 2, or on the adjacent lot not acquired by the city.

[3] The appeal of Harold Swain, respecting the award to him for damage parcels Nos. 19 and 23, rests upon an unusual and somewhat complicated state of facts, arising from the circumstances that a single plot of land, with a dwelling house thereon, has been taken in condemnation proceedings by the city of New York in two separate proceedings, in which the title vested in the city on different dates. The appellant on this appeal owned, at one time, a lot of land approximately 35 feet in width and 100 feet in depth, bounded on the south by Claremont Park and on the west by Morris avenue. Its other boundaries are immaterial. Upon this plot was erected a two-story dwelling house, with an extension and certain outhouses. In 1904 proceedings were instituted for opening Belmont street as then laid out on the city map, in which proceeding it was proposed to acquire the southerly 50 feet of appellant's plot, including all of the

dwelling house except the rear or northerly wall and the extension. In the year 1905 a map was filed (upon which the present proceeding is based) showing a proposed widening of Belmont street into the Parkway, and which included among the lands to be acquired the northerly half of appellant's plot, upon which stood the rear wall of the dwelling·house, and the extension as well as the outhouses. Commissioners in this proceeding were appointed in May, 1906. On November 2, 1906, a resolution was adopted by the board of estimate and apportionment under which the title to lands included in the present proceeding vested in the city of New York on November 26, 1906, but no such resolution was adopted relative to the lands to be acquired in the Belmont street proceeding, and title to the lands taken in that proceeding did not vest in the city until December 4, 1907, when the report of the Commissioners was confirmed. Consequently, although the proceedings to acquire the northerly half of appellant's plot were instituted long after the proceedings to acquire the southerly half, the city acquired title to the northerly half more than a year earlier than it acquired title to the southerly half. In the Belmont street proceeding the appellant appeared before the commissioners, and claimed and was allowed the value of his house upon the theory that the taking of all of it except the rear wall was equivalent to a total destruction. After that report had been confirmed and his right to the award made therein had become fixed, he appeared before the commissioners in this proceeding, and claimed to be allowed, a second time, the full value of the house on the ground that the rear wall of the house was included in the land to be taken herein, and that taking away the rear wall would practically destroy· the value of the entire building. His theory is that at the time the city became vested with title to the northerly half he was still the owner of the southerly half, on which the greater part of the house stood; that he is entitled to be awarded the value of the property as of the date on which title vested in the city; and that such value should be determined with regard to the title of the southerly half as it then was, and without regard to the fact that the southerly half was then under condemnation. Upon these assumptions, he invokes the general rule that where there is a whole plot in one ownership, and only a part of that plot is taken for public purposes, the owner is entitled, not only to the value of the land actually taken, but also to the consequential damages, incident to the taking, to that portion of the plot which is not taken. Hence he argues that the Belmont street proceeding must be ignored, and that he must be allowed in this proceeding, not only the value of the northerly half of the plot, which is actually taken, but the value of the dwelling house, all but the rear wall of which stood on the southerly half of the plot, which, when title to the northerly half vested in the city, was owned by appellant. The commissioners refused to award damages upon this theory, but based their award upon what they found to be the value of the land actually taken in this proceeding and the structures erected on that land. In this regard their award was confirmed by the Special Term. This, we think, was right. The rule of damages invoked by the appellant is only a rule of damages, and was devised to promote justice, and, while gener-

ally applicable, is not to be applied where, under unusual circumstances, it will work manifest injustice. There were two proceedings pending at the same time, of the pendency of which this appellant had notice and knowledge. In one or the other he was entitled to be compensated by an award for the value of his house, and he could have proved that value in either proceeding, for in each proceeding enough of the house was taken to destroy its value, but upon the clearest principles he was not entitled to be compensated twice for the same house. He was thus put to his election as to which proceeding he would prove the value of the house in as an element of damage. Having made that election and having had his claim allowed in the proceeding which he selected, he must abide thereby.

[4] The evidence of the proceedings before the Belmont street commissioners was properly received to establish the fact of appellant's election.

It follows that the order appealed from, in so far as the city of New York has appealed therefrom, must be reversed, and the report of the commissioners respecting damage parcels Nos. 1 and 2 confirmed, and said order in so far as appealed from by Harold Swain must be affirmed, with $10 costs and disbursements to the appellant-respondent, the city of New York. All concur.