In the Matter of the Application and Petition of GEORGE J. GILLES-PIE and Others, Constituting the Board of Water Supply of the City of New York, Petitioners, to Acquire Real Estate for and on Behalf of the City of New York, etc.

NEW YORK CENTRAL RAILROAD COMPANY, Claimant.

Supreme Court, Special Term, Ulster County, January 15, 1940.

*William C. Chanler*, Corporation Counsel [*Henry R. Bright* and *John E. Egan* of counsel], for the petitioners.

*Harry H. Flemming*, for the claimant.

SCHIRICK, J. This is an application by the petitioners, hereinafter referred to as the city, to vacate the award herein, upon the ground of fraud and newly-discovered evidence.

There can be no question as to the jurisdiction of the court to entertain this motion, even though the award has been affirmed on appeal. (*Keister* v. *Rankin*, 34 App. Div. 288; *Corley* v. *New York & Harlem R. R. Co.*, 12 id. 409.)

The condemnation proceeding was a result of the release, by the city, into the Esopus creek of additional waters impounded by the Gilboa dam and carried into the Esopus creek by way of the Shandaken tunnel. Owners of riparian rights along the Esopus creek were thus afforded the opportunity of proving the damages sustained by them by reason of the increased flow of water.

The New York Central railroad, hereinafter referred to as the railroad, is the owner of various parcels of land along the creek, and has presented claims for damages thereto. The particular parcel with which we are concerned in this application is known as parcel 49 on a map filed by the city in the Ulster county clerk's office. On this parcel, located at the village of Phoenicia, there is a railroad bridge, known as bridge 97, across Esopus creek. This bridge is part of a branch line leading from Phœnicia to Hunter.

Upon the hearing before the commissioners of appraisal the railroad urged that the increased flow of water in the creek placed a great strain upon the abutments and foundations of the bridge. Witnesses for the railroad stated that these would have to be strengthened and that large amounts of money would have to be expended for the care and maintenance of the bridge in perpetuity against the ravages of the increased water flow of the creek. It was upon this theory that the issue of damage to parcel 49 was tried before the commissioners. Upon the motion to confirm the report of the commissioners of appraisal, the theory of perpetual maintenance was again urged, and was accepted by the Special Term. Upon appeal to the Appellate Division, Third Department, the order of the Special Term was affirmed (257 App. Div. 1059).

Within a few days after the decision of the Appellate Division, the railroad filed with the Interstate Commerce Commission an application for a certificate permitting the discontinuance of the branch line of which bridge 97 is a part. Hearings have been held before an examiner of the Interstate Commerce Commission. At these hearings witnesses for the railroad made it clear that it was the desire and the intention of the railroad, if permitted to do so by the Interstate Commerce Commission, to discontinue the operation of the branch line, and to abandon the bridge in question. Upon cross-examination by counsel for the city, the railroad witness Vories admitted that such intention had been entertained for several years.

It appears, therefore, that at the very moment when the railroad was arguing before the commissioners of appraisal, to the effect that it would be forced to expend large sums for rebuilding and perpetual maintenance of bridge 97, it had formed an intention of seeking permission to abandon it. *A fortiori*, this was true at the time when the theory of perpetual maintenance was argued with great force before the Special Term and the Appellate Division.

The court does not imply, and it is not urged by counsel for the city, that the conduct of present counsel for the railroad was in any way subject to criticism. One who represents so huge an enterprise as the New York Central railroad in one of the phases of its activities, can hardly be expected to know the details of each other branch of the activities of the corporation. Nevertheless, it is the railroad which secured an award, based upon a premise which has since been proven false. Such award ought not to stand.

It is urged by counsel for the railroad that its intention is immaterial, since it is without power to abandon any part of its lines without the permission of the Interstate Commerce Commission. Indeed, it is urged that this application is prematurely made, since such permission has not, and may never be, granted. The court is unable to concur in this view. The intention to abandon, even though not effective without the consent of the Interstate Commerce Commission, does not lack materiality. A request by the railroad must normally precede any action by the Interstate Commerce Commission. The initiative is the railroad's. It is perfectly obvious that the probabilities of eventual abandonment are much greater in the case of a line that has formed an intention to abandon than one which is content to maintain operations and does not seek to abandon. The railroad, in the present case, offered proof of material and expensive structural changes which it would have to make. The commissioners of appraisal, if evidence of intent to abandon were produced before them, would be justified in finding that no such alterations would, in fact, be made. Such evidence is not only competent, but is entitled to great weight.

In the view which the court has taken, whether or not the present application to the Interstate Commerce Commission will be granted is not of determinative importance. Even if it should be presently denied, there is nothing to prevent a renewal of such application at a future time. Such repeated applications are probable, in view of the fact that the branch line is operating at loss, and that desire to abandon exists. Parenthetically, it may be pointed out that the examiner for the Interstate Commerce Commission has already rendered his report, in which he recommends that permission to discontinue be granted.

1044

The following cases support the conclusion here reached: *Matter of City of New York (Boscovel Ave.)* (161 Misc. 169); *Matter of City of New York (Hawkstone St.)* (137 App. Div. 630; affd., 199 N. Y. 567); *McPhillips* v. *Fitzgerald* (76 App. Div. 15; affd., 177 N. Y. 543); *Matter of City of New York (Jamaica Bay)* (247 App. Div. 449); *Matter of Simmons* (139 id. 273).

The motion is granted, vacating the award as to parcel 49, in so far as it relates to future damage.