Van Voorhis, J.
The defendants appeal from an interlocutory judgment determining that plaintiff and defendant Robert Benenson entered into a joint venture for the acquisition as an investment of a parcel of real property, occupied by the Hearn Department Store, at 4r-6 West 14th Street and 3 West 13th Street, in the borough of Manhattan, city and State of New York, and directing an accounting of said joint venture. Defendant 4-6 West 14th Street Corporation is the vehicle by which the trial court has held that this joint venture was to have been accomplished.
It is undisputed, and the court has found, that there was no contract, nor any note or memorandum {hereof, in writing, expressing the consideration, signed by the party to be charged. If there was merely an oral contract between plaintiff and defendant Benenson for the purchase of real property as tenants in common, plaintiff is barred from recovery by the Statute of Frauds (Real Property Law, § 259). On the other hand, if it was, as has been held, a contract for a partnership or joint venture in lands, no writing was necessary (Chester v. Dickerson, 54 N. Y. 1; Mattikow v. Sudarsky, 248 N. Y. 404).
This legal distinction for many years has caused parties desiring to enforce oral contracts for the conveyance of land to endeavor to spell out joint ventures or partnerships, in order to escape the bar of the Statute of Frauds. The evidence in litigations of this kind should be scrutinized in order to determine whether the facts warrant a conclusion that a joint venture or partnership was formed. Thus, in Pounds v. Egbert (117 *326 App. Div. 756, 761, Miller, J.) this court stated: “ In order to determine whether a partnership existed, it is quite essential to know the terms of the agreement, and yet all the defendant agreed to do, according to the plaintiff, was to purchase the tract with him and to convey a half interest in the property when he had established an equality as to contributions. The learned counsel for the plaintiff says in his brief that the plaintiff testified to the ‘ conclusion of fact ’ that a copartnership was formed, and would have testified to the terms of the agreement if asked; but calling men partners does not make them such, and I have scanned the record in vain to find that the plaintiff testified to any such conclusion. The only suggestion of a partnership is the statement of the plaintiff that he talked with the defendant about becoming a partner, but this is followed by a statement of a specific agreement tending to indicate an understanding that the parties were to be tenants in common.”
It becomes necessary, therefore, to analyze this record in order to ascertain what was the relationship between these parties.
It is evidently true that defendant Benenson and plaintiff’s assignor, Abraham J. Halprin, had engaged in joint ventures in the past respecting other parcels of real estate. No claim is made, however, that this parcel of real property was purchased with funds of any previously constituted joint venture or partnership, or that it was involved in a continuation of any such previous arrangement. The bill of particulars, and the testimony adduced in plaintiff’s behalf, set forth that plaintiff relies on a new agreement for a separate venture, dealing with this particular real estate only, claimed to have been formed on April 16, 1946, at New York City, and subsequently amended on April 23d and May 23d of the same year. It is plaintiff’s contention that the said alleged joint enterprise or partnership was entered into between defendant Benenson and Abraham J. Halprin, each of whom was to participate on an equal basis, but that, with Benenson’s consent and subsequent ratification, Halprin transferred to plaintiff a 25% interest in this venture, and surrendered his other 25% to Benenson.
The testimony of Halprin himself furnishes the only basis on which plaintiff contends that a joint venture was formed in the beginning. It is inadequate to that purpose. He testified that he was first informed of the project on April 16,1946; when, in New York City, he received a long-distance telephone communication from Benenson from Atlantic City, New Jersey. *327 Halprin’s testimony concerning this was read into the record from his examination before trial, and is as follows:
“ Q. And what did he [Benenson] say to you? A. He told me that he had heard of the Hearns property on 14th Street and that the property could be bought, my recollection is, for $450,000; that the Hearns lease was expiring soon, and that it was his judgment that Hearns would have to renew the lease by reason of the fact that this property was part of the entire Hearns parcel and could not be separated except to great disadvantage to the Hearns Company. And he felt sure that we could get a good rent, and he wanted to know whether I was interested. He mentioned I believe the rent, but what it was I don’t remember. He wanted to know what I thought of it, and I told him I thought it was a good investment, because we could renew the Hearns lease, we could get a good mortgage. He told me that I could have a half interest. * * *
“ He also told me that Charlie Benenson, his nephew, heard of it originally, and he may be interested. And I told him that I had no objection to Charlie going in with him, but that I was advancing no money for Charlie Benenson. He told me that the lawyer for the seller was going to leave town the next day and that the contract had to be closed the next day. He mentioned a broker, I think the firm was Adams & Company, and the individual’s name was I believe Elkin or some similar name. I told him that I could not be there the next day as I was going to argue a case in the Court of Appeals, but that Mr. Sohn would close the contract. He asked me whether I could advance the deposit of $45,000, which was 10 per cent of the purchase price; and I told him I would. He suggested that I call up either Charlie Benenson or Max Notess, an associate of Charlie Benenson, and explain to him that if he wanted to go in on Rob’s share that he would have to pay his own way, and to tell him that I was taking 50 per cent. I think that is about all that I recall of the conversation.”
There is nothing more in the record to establish that a joint venture was formed between Halprin and Benenson concerning this real property. This testimony goes no farther than to establish an oral contract between Halprin and Benenson for the purchase as tenants in common.
Even if it were to be assumed that the evidence is sufficient to show that Benenson orally consented to the assignment to plaintiff of half of Halprin’s share in the contract of purchase, and the relinquishment of his other half to Benenson, that would not prove that a joint venture was created.
*328 Halprin is a lawyer, and from time to time had performed legal services for Benenson. He was Benenson’s attorney in this transaction. On April 23, 1946, plaintiff and Benenson met at Halprin’s office. Benenson suggested and plaintiff consented that a corporation be formed by Halprin to take title to this parcel of real property, and that it should issue one fourth of its stock to plaintiff and the other three fourths to Benenson or his nominees. On the same occasion, Halprin also testified Benenson stated that plaintiff would have to agree to several conditions, viz., that Benenson would have the management of the property; that Benenson was to charge a brokerage commission for obtaining a renewal lease with Hearn’s department store, and likewise for placing a first mortgage on the property with an insurance company; and that if Benenson so desired, plaintiff would consent to sell the property at a profit of $75,000. There is some testimony that plaintiff orally accepted these conditions.
On the same date, April 23, 1946, Halprin sent to Benenson plaintiff’s check for $11,250 as plaintiff’s quarter share of the $45,000 deposit on the contract of purchase, together with a letter of transmittal hereinafter set forth, which check Benenson immediately returned to Halprin. Halprin’s letter of transmittal was as follows: “I enclose you herewith check for $11,250.00 of Irving Weisner, dated April 18th, 1946, which I have endorsed over to you. As I told you, after you agreed to give me a 50% interest, I gave one-half of it to Irving Weisner. As I explained to you, I am not interested in continuing in this matter. Irving Weisner has a one-fourth share. I enclose you herewith assignment of one-fourth share to him, which please execute and return. ’ ’
On May 15, 1946, Halprin again sent this check to Benenson, without the latter’s request. By letter dated May 20, 1946, Benenson returned this cheek again to Halprin, and advised him that before it would be accepted it would be necessary for the plaintiff and his brother, Sidney Weisner, to sign an agreement with the defendants providing for the following:
“ 1. That Benenson Management Co., Inc. is to be appointed sole managing agent to service the property. Since this is a one-tenant proposition with only nominal work involved, there will be no charge for services, except possible audit charges for preparing and filing the federal and state tax returns.
“2. As per our understanding, said management company is to receive, as licensed real estate broker, the legal real estate *329 board commission for services rendered in connection with negotiating and concluding the lease between the owners and Hearn Department Stores, Inc.
“ 3. The said Benenson Management Co., Inc. is also to receive regular brokerage commission for procuring a first mortgage on the above property for which they are now engaged in negotiating with several loaning institutions.
“4. In case of a sale, we believe the management company should be authorized to sell the property for a price not less than $75,000.00 cash over the purchase price.
‘ ‘ If you will kindly prepare such an agreement and have same executed by the aforementioned parties, we shall then proceed on the basis of them having a twenty-five per cent interest in the property and arrange to have them contribute their proportionate share.” This letter was not answered in writing.
These were in substance the same conditions, except for the mention of Sidney Weisner, to which Benenson had requested that plaintiff agree at the meeting on April 23,1946, at Halprin’s office.
On May 23, 1946, plaintiff and Benenson had a conference at the latter’s office in the course of which the last-mentioned condition, that Benenson Management Co., Inc., was authorized to sell the premises at a price of not less- than $75,000 cash above the purchase price, was orally modified by eliminating it and providing instead that in event that defendant 4 — 6 West 14th Street Corporation became willing to accept an offer for the purchase of the premises, either Benenson or plaintiff would have the right to purchase at the price offered. There is testimony that at the same conference Benenson orally agreed that plaintiff could take his interest in the name of plaintiff’s sister, Bessie Klatsky. Benenson denied that he accepted her as plaintiff’s alter ego.
Several days later, Bessie Klatsky signed a letter prepared by Halprin, which was sent to Benenson, reading as follows:
“ This will confirm our understanding re the above property, that the corporation is to adopt the following resolutions, which are satisfactory to me:
“ ‘ Resolved, that the corporation employ Benenson Management Corp. as sole managing agent for the property, upon condition that there be no charge for services excepting audit charges for preparing and filing the Federal and State income tax returns; and it is further
“ ‘ Resolved, that Benenson Management Corp. is employed to negotiate a lease of the property or a renewal of the existing *330 lease, and in consideration of the services to be rendered by it, it is to be paid the Real Estate Board Commission; and it was further
“ ‘ Resolved, that Benenson Management Corp. is employed to act as a broker for procuring the first mortgage on the property and is to receive the regular brokerage commission payable upon obtaining such a mortgage satisfactory to the company. ’
“ The following resolution was also adopted:
“ 1 Resolved, that the by-laws be amended to provide that there shall be no sale of the property by the corporation excepting that if any stockholder objects to the sale, he shall be given an option of ten days to purchase the property at the same price offered by the corporation. ’
Bessie Klatsky ”
On June 15,1946, plaintiff signed an identical letter and mailed it to Benenson.
Benenson did not approve these communications in writing, although there is some testimony that he acceded to them orally. The proposed resolutions were not adopted by the defendant corporation.
On April 22,1946, a corporation owned and controlled by Benenson, known as Canfield Properties, Inc., signed a contract for the purchase of this real- property for the sum of $452,000, payable $45,000 in cash on the signing of the contract, and the balance of $407,000 in cash at the closing of the transfer of title. Benenson paid from his own funds the entire $45,000 deposit, and no funds of either plaintiff or Halprin entered into the deposit or the subsequent payment of the balance of the purchase price upon the transfer of title. Halprin represented Benenson as attorney in transacting the business with the vendors of the property, and likewise in obtaining a $375,000 mortgage loan from Prudential Insurance Company of America. Title to this parcel of real property was transferred to the defendant 4-6 West 14th Street Corporation simultaneously with the closing of the mortgage loan on June 30,1946. It gave the mortgage to the Prudential. Benenson paid the balance of the purchase price out of his own funds.
In order to validate the corporate mortgage to Prudential Insurance Company of America, Benenson delivered stockholders’ consents, signed by himself and his nominees, accounting for 75% of the authorized stock of the company. It is argued that this shows a recognition by Benenson that plaintiff owned the other 25% of the stock, but such an argument does not tend to *331 satisfy the Statute of Frauds, nor to establish the existence of a joint venture. Benenson subsequently notified plaintiff that plaintiff had no interest in the corporation, or in the said real property.
The foregoing statement of facts contains the evidence on the basis of which the plaintiff claims, and the trial court has found, that a joint venture was established between plaintiff and defendant Benenson.
It is admitted, and the trial court has held, that there is nothing in any of the said written communications which is sufficient to comply with the Statute of Frauds, if the transaction be regarded as a contract for the purchase by plaintiff and Benenson of real property. Plaintiff relies entirely upon the theory of a joint enterprise or partnership. The law on this subject has been well summarized by the annotator of the numerous decisions in New York and other States cited at 150 American Law Reports 1032, as follows: “ The purchase of lands, even for the purpose of selling them at a profit to be divided in proportion to the interests of the purchasers (particularly if there is no understanding regarding bearing possible losses) does not of itself constitute the purchasers partners, inasmuch as tenants in common or other cotenants would have similar rights, and in the absence of further agreements or acts the relation of partnership will not be superimposed upon them, at least if there is no apparent intention to enter that relationship.”
The New York cases cited under this annotation support it. Thus in Porter v. M'Clure (15 Wend. 187), the court said concerning common ownership of land (p. 192): “ Whatever that tenure might be, it would not constitute them partners; they might or might not become partners in carrying on milling business. A community of interest in land does not make men partners, nor does a mere community of interest in personal property. There must be some joint venture, and an agreement to share in the profit and loss of the undertaking. ’ ’
This language was quoted with approval in Sage v. Sherman (2 N. Y. 417, 427).
In McPhillips v. Fitzgerald (76 App. Div. 15, affd. 177 N. Y. 543) this court said, per George L. Ingraham, J. (pp. 21-22):
“ It is not claimed that these two plaintiffs were in copartnership, except so far as related to their ownership of this property. They were not transacting business as partners, and no copartnership existed prior to the time that they purchased the property. A ease is not presented, therefore, where a copartnership *332 has acquired title to property which was purchased with copartnership funds or used in the business of an existing copartnership. It is true that parties may form a copartnership for the purpose of dealing in real estate or of leasing real estate; but to establish that relation there must be evidence to show that it was the intention of the parties to create such a copartnership, and it is in that aspect that I think this case fails.
‘ ‘ It is true that the lease and buildings when first purchased by these two plaintiffs were purchased under an agreement by which each of the assignees of the lease was to advance an equal portion of the consideration paid, and that the loss and profits were to be divided between them. There was, however, none of the incidents of a copartnership, and it is quite clear that neither of these parties understood by this arrangement that there was created a copartnership which would carry with it the duties and obligations attaching to that relation. ’ ’
The circumstance that the parties in the instant suit discussed the formation of a corporation to take the title, and contemplated the division of stock between them instead of themselves becoming tenants in common of undivided interests in the real property, does not take the case out of the Statute of Frauds. The corporation was merely a vehicle by means of which they proposed to purchase real property. The fact that they agreed to take stock instead of fractional shares in the real estate, does not turn the transaction into a joint venture. An oral contract between them to take title to the real estate in both names would clearly have been rendered void by section 259 of the Beal Property Law, which requires a writing providing for the salje of real property expressing the consideration and subscribed by the party to be charged or by his lawful agent thereunto authorized by writing. The oral contract between these parties, even as it is claimed by plaintiff to have existed, is equally void under this section inasmuch as it constituted but an executory agreement for the conveyance of real property to the corporation. The fact that the parties may have chosen that a corporation should hold the title is not sufficient to escape the Statute of Frauds, nor does it tend to establish the existence of a joint venture. If it were to be argued that section 259 of the Beal Property Law was satisfied by the completion of the transfer of title to the defendant corporation, and that to this extent the transaction was executed, that would not be a substitute for an expression in writing of the consideration to be supplied by plaintiff and Benenson nor establish their proportionate inter *333 ests, and moreover an oral contract for the sale to plaintiff of 25% of the stock in the corporation for $19,250 (being 25% of the purchase price paid by Benenson in excess of the proceeds of the Prudential mortgage) would be unenforcible under section 85 of the Personal Property Law. It is equally essential to plaintiff to establish the joint venture or partnership theory under this aspect of the case.
The cases cited to support respondent’s position are distinguishable. Special Term deemed Chester v. Dickerson (54 N. Y. 1, supra) to be controlling. It was there held that where several defendants conspired to perpetrate a fraud in accomplishing the sale of real property for a sum greatly in excess of its true value, each was liable for the fraud committed by their concerted action in and about the business of their joint enterprise. The case is authority for the proposition that there can be a parol agreement to enter into a joint venture or partnership to speculate in lands, but there the evidence of the consummation of such a relationship was clear. The defendants had combined to pour oil upon lands, representing to a purchaser that it was the natural product of oil deposits beneath the earth; a sale in the interest of all of the joint adventurers had been made, and, having participated jointly in this ill-gotten gain, each was held answerable for the damage suffered by plaintiff from the fraud. In the case at bar, the arrangement remained executory; none of plaintiff’s money went into this transaction; there was no oral or written agreement to share profits or losses, and the testimony is merely that there was an oral understanding that plaintiff and Benenson were to become purchasers of real property through the medium of a corporation. That the incentive of investors in real property is to make a profit, does not transform them into joint adventurers.
The other cases cited in respondent’s brief also differ on the facts. Like Chester v. Dickerson, they are cited in support of the general proposition that a partnership or joint venture may be created by parol in reference to the purchase, sale and ownership of lands, concerning which there is no dispute.
In Mattikow v. Sudarsky (248 N. Y. 404, supra) there was a clear agreement to share profits and losses in the purchase and sale of a succession of real properties.
In King v. Barnes (109 N. Y. 267) the plaintiffs had supplied capital for the joint venture. The court said (p. 286): “ What might have been the remedies of the parties to this contract if it had remained unexecuted, and there had been a breach thereof, is *334 quite unnecessary to inquire, inasmuch as the contract was subsequently executed, and large sums of money were advanced and expended upon the faith of it in the formation of the corporation, and in the purchase of the lands intended to be used in the contemplated enterprise.” That suit was not brought, as here, at the instance of a party who had not supplied any capital; rather, it was instituted to “ establish the rights of parties advancing money and incurring liabilities in reliance thereon against other parties liable by the express terms of the contract to contribute equally to such advances and share such liabilities.”
In Traphagen v. Burt (67 N. Y. 30) it was proven that plaintiff and defendant entered into an oral agreement to purchase and improve real estate on joint account, sharing equally the profits and losses; that, under this arrangement, two farms were purchased which were conveyed to the parties jointly, and that a third farm was purchased and maintained out of the proceeds of the venture and with moneys otherwise supplied by both parties, but was conveyed to the defendant individually. It was held that the third farm also belonged to the joint venture.
Babcock v. Read (99 N. Y. 609) involved the case of a definite oral agreement to share profits and losses, a purchase made in plaintiff’s name with money paid by him, and a sale at a loss, upon defendant’s advice and through his firm as a participant in the joint venture. It was held that as a joint adventurer defendant was liable to contribute toward making good this loss.
Fairchild v. Fairchild (64 N. Y. 471) involved real estate purchased for and appropriated to partnership purposes, and paid for out of partnership funds.
In Rauch v. Donovan (126 App. Div. 52) plaintiff refrained from bidding at an auction sale in reliance upon defendant’s promise to purchase land for their joint account.
The facts in these cases relied on by respondent to support the judgment appealed from are not in the present record.
The judgment should be reversed upon the law and the facts, with costs to the appellants, and the complaint dismissed.
Peck, P. J., Glehnon and Callahan, JJ., concur; Shientag, J., dissents and votes to affirm.
Judgment reversed, with costs and the complaint dismissed. Settle order on notice.